# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ING BANK N.V.** | § | **CIVIL ACTION NO. 2:16-cv-7** |
| | § | |
| **v.** | § | **JUDGE BROWN** |
| | § | |
| **FUJIAN OCEAN SHIPPING CO., LTD.** | § | **MAGISTRATE JUDGE ROBY** |
| | § | |
| | § | **ADMIRALTY** |

## VERIFIED FIRST AMENDED COMPLAINT

NOW COMES, plaintiff, ING Bank N.V. ("ING Bank") through undersigned counsel, and files this Verified First Amended Complaint against defendant, Fujian Ocean Shipping, Co., Ltd. ("FOSCO"), for damages and maritime attachment, and upon information and belief, avers as follows:

## I.      JURISDICTION AND VENUE

### 1.

This is an admiralty and maritime claim within this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and within the meaning of Federal Rule of Civil Procedure 9(h). This action is brought pursuant to and in accordance with Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

### 2.

Venue is proper in this District in accordance with Rule B as the M/V ZHENG YAO, IMO No. 9601883 ("ZHENG YAO"), owned, operated and managed by FOSCO, is or will be within the physical jurisdiction of this Court during the pendency of this action.

## II.  PARTIES

3.

At all material times, ING Bank was and is a banking and financial services corporation or business entity organized and existing pursuant to the laws of The Netherlands, with a place of business in Amsterdam, The Netherlands.   As more fully set forth herein, ING Bank is an assignee of certain accounts, assets and maritime liens of O.W. Bunker Far East (S) PTE, Ltd. EP ("OW Bunker"), and Dynamic Oil Trading (Singapore) PTE, Ltd. ("DOT") including the accounts receivable and corresponding maritime liens on the following vessels:

A.      the M/V ZHENG RUN, IMO No. 9593816 ("ZHENG RUN");

B.      the M/V ZHENG RONG, IMO NO. 9593828 ("ZHENG RONG");

C.      the M/V ZHENG TAI, IMO No. 9118666 ("ZHENG TAI");

D.      the M/V ZHENG HENG, IMO No. 9593799 ("ZHENG HENG"); and

E.      the M/V ZHENG BANG, IMO No. 9086057 ("ZHENG BANG").

(The ZHENG RUN, ZHENG RONG, ZHENG TAI, ZHENG HENG, and the ZHENG BANG are sometimes collectively referred to as the "Supplied Vessels.")

4.

ING, as the holder of OW Bunker and DOT's aforesaid accounts receivables against FOSCO and the corresponding maritime liens on the Supplied Vessels, prosecutes this admiralty claim against FOSCO and requests the maritime attachment of the ZHENG YAO as more fully set forth herein.

5.

ING Bank is the coordinator, agent, and security agent under that certain US$ 700,000,000.00 Multicurrency Revolving Borrowing Base Facilities Agreement, dated

December 19, 2013 (the "Credit Agreement"), and related guaranty, pledge, and security agreements, including that certain English Omnibus Security Agreement, dated December 19, 2013 (the "Security Agreement").

6.

OW Bunker and DOT are borrowers and guarantors of the obligations owing under the Credit Agreement and are in default of those obligations.

7.

OW Bunker and DOT are also parties to the Security Agreement, pursuant to which they absolutely assigned all of their rights, title and interests as of December 19, 2013, in certain assets, including customer accounts receivable for bunker deliveries, to ING Bank.

8.

OW Bunker and DOT have assigned to ING Bank all of their rights, title and interests, including their right to institute this action and enforce their respective maritime liens and claims against the Supplied Vessels and FOSCO, in the amounts owed to OW Bunker and DOT for the respective bunker deliveries made to the Supplied Vessels, as more fully described infra.

9.

At all material times, defendant, FOSCO, was and still is, upon information and belief, a foreign business entity with an address at 25th Floor, Block 2, Empark Business Center, Gui An, CN-350506 Fuzhou, People's Republic of China and is, upon information and belief, the group owner and/or beneficial owner and/or demise charterer and/or operator and/or manager of the ZHENG YAO as well as all of the Supplied Vessels. FOSCO is also the entity that ordered all of the bunkers referenced herein.

10.

Upon information and belief, Zheng Yao Shipping Group, Ltd. ("Zheng Yao Shipping") is the registered and nominal owner of the ZHENG YAO. Zheng Yao Shipping is a single vessel business entity. Upon further information and belief, and as more fully set forth in § VI herein, FOSCO so dominates the Zheng Yao Shipping and has fraudulently created and interposed Zheng Yao Shipping to potentially avoid the attachment or other seizure of the ZHENG YAO as security for the debts and liabilities incurred by FOSCO in its ordinary business operations, such that Zheng Yao Shipping is a mere alter ego of FOSCO. Accordingly, this Court should disregard the corporate separateness of two entities.

11.

Undersigned counsel for ING Bank has contacted the Secretary of the State of Louisiana and verified that FOSCO is not registered to do business within the State of Louisiana and has not appointed any registered agent for service of process.

**III.   TRANSACTIONS BETWEEN OW BUNKER AND FOSCO FOR THE SUPPLY AND DELIVERY OF BUNKERS TO THE ZHENG RUN AND ZHENG RONG**

12.

As discussed with greater specificity herein, when FOSCO ordered bunkers for its vessels, including the ZHENG RUN and ZHENG RONG, from OW Bunker, OW Bunker would issue a Sales Order Confirmation to FOSCO, which confirmation would identify the specific vessel to be supplied with bunkers, the location of the supply, the estimated date(s) of supply, the type and quantity of bunkers to be supplied, the price per volume of bunkers to be supplied, as well as other provisions.

13.

Each Confirmation issued by OW Bunker contained the following relevant language:

The sale and delivery of the marine fuels described above are subject to the OW Bunker Group's Terms and Conditions of sale(s) for Marine Bunkers. The acceptance of the marine bunkers by the vessel named above shall be deemed to constitute acceptance of said general terms to you as 'Buyer' and to O.W. BUNKER FAR EAST (S) PTE LTD. as 'Seller'.

The fixed terms and conditions are well known to you and remain in your possession. If this is not the case, the terms can be found under the web address: http://owbunker.com/wp-content/uploads/2013/12/OWB_GTC_ValidFrom01092013.pdf

Accordingly, each Confirmation, as well as the sale and delivery of marine fuels to the ZHENG RONG and the ZHENG RUN, was subject to the OW Bunker Group Terms and Conditions of sale for Marine Bunkers, Edition 2013, a true and correct copy of which is attached as Exhibit A, hereafter the "OW General Terms."

14.

Article B.1 of the OW General Terms defines the term "Buyer" to mean the vessel supplied and, jointly and severally her master, owners, managers/operators, disponent owners, time charters, bareboat charterers, and charterers or any party ordering bunkers and / or services. (Exh. A, General Terms, p. 2, art B.1.)  As discussed *infra*, the ZHENG RUN and the ZHENG RONG accepted marine bunkers from OW Bunker, pursuant to their respective Confirmation. Accordingly, the ZHENG RUN and the ZHENG RONG and FOSCO fall within the definition of Buyer and are, therefore, bound and obligated jointly and severally to the Confirmation and to the OW General Terms, which OW General Terms were incorporated in the Confirmation by express reference and adoption.  See *One Beacon Ins. Co. v. Crowley Marine Servs., Inc*., 648 F.3d 258, 269 (5th Cir. 2011).

15.

Article I.3(iv) of the OW General Terms provides as follows:

Where [the Supplied Vessel] fails to pay timely, [OW Bunker] has the right to (without prejudice to its rights to receive default/delay compensation) take all appropriate steps to secure and enforce its claim…

(Exh. A, OW General Terms, p. 7, art. I.3.)

16.

Article I.9 of the OW General Terms provides as follows:

Where Bunkers are supplied to [the Supplied Vessel], in addition to any other security, the Agreement is entered into and the Goods are supplied upon the faith and credit of [the Supplied Vessel]. It is agreed and acknowledged that the sale of Bunkers to [the Supplied Vessel] and/or their acceptance on [the Supplied Vessel] create a maritime lien over [the Supplied Vessel] for the price of the Bunkers (and all interest and costs payable in respect thereof; including but not limited to the reasonable attorney's fees), such maritime lien afforded to [OW Bunker] over [the Supplied Vessel]. In any event any applicable Law shall not prejudice the right of the maritime lien of [OW Bunker] afforded hereunder or by any other applicable Law, be it of the place of delivery, the flag of the Vessel, or the place of jurisdiction and/or arrest of the Vessel, or otherwise howsoever.

(*Id.*, p. 8, art. I.9.)

17.

Article P.5 of the OW General Terms provides as follows:

The General Maritime Law of the United States shall always apply with respect to the existence of a maritime lien, regardless of the country in which [OW Bunker] takes legal action. [OW Bunker] shall be entitled to assert its rights of lien or attachment or other rights, whether in law, in equity or otherwise, in any jurisdiction where the Vessel may be found.

(*Id.*, pp. 11 – 12, art. P.5.)

18.

For clarity of discussion in this § III, OW Bunker, as assignor, and ING Bank, as assignee, are referred to collectively as "OW Bunker".

6

19.

In filing this Verified Complaint, OW Bunker exercises its discretion to proceed against FOSCO including the maritime attachment of the ZHENG YAO under the substantive laws of the General Maritime Law of the United States of America as well as the Commercial Instrument and Maritime Liens Act, 46 U.S.C. §§ 31303 *et seq*. and under the procedural laws of the Federal Rules of Civil Procedure, including the Supplemental Rules for Admiralty and Maritime Claims, as well as the Local Rules of the U.S. District Court for the Eastern District of Louisiana.

**A.      Unpaid Bunkers Supplied and Delivered to the ZHENG RUN**

20.

OW Bunker contracted to provide bunkers and related barging services to the ZHENG RUN in Singapore, which bunkers were ordered by FOSCO. This contract to provide bunkers is evidenced by Sales Order Confirmation No. 201-10507, dated August 27, 2014, a true and correct copy of which is attached as Exhibit B-1, hereafter the "ZHENG RUN Confirmation".

21.

The ZHENG RUN Confirmation, as well as the supply and delivery of marine fuels to the ZHENG RUN, were subject to the OW General Terms, as set forth above in Paragraphs 13 – 17, which are repeated herein as if copied *in extenso*.

22.

On August 27, 2014, OW Bunker issued the ZHENG RUN Confirmation for the account of FOSCO, which was addressed to FOSCO, and indicated that it would provide 700.00 metric tons of Fueloil 380-CST 3.5% marine bunkers to the ZHENG RUN in Singapore, with an estimated delivery date between September 1, 2014 and September 5, 2014.  (Exh. B-1, ZHENG RUN Confirmation, p. 1.)

23.

On October 21, 2014, pursuant to the ZHENG RUN Confirmation and the OW General Terms, the ZHENG RUNG accepted the delivery of 684.508 metric tons of Fueloil 380-CST 3.5% marine bunkers from OW Bunker.  The bunker delivery was made on behalf of OW Bunker as evidenced by the Bunker Delivery Note, true and correct copy of which is attached as Exhibit B-2, hereafter the "ZHENG RUN BDN".

24.

On October 21, 2014, OW Bunker issued an invoice to the ZHENG FUN, which was addressed to FOSCO, referencing Sales Confirmation No. 201-10507, in the amount of US$ 408,651.28 for 684.508 metric tons of Fueloil 380-CST 3.5% marine bunkers delivered to the ZHENG RUN in Singapore, to be paid on or before December 4, 2014, a true and correct copy of which is attached as Exhibit B-3, hereafter "ZHENG RUN Invoice".

25.

As of this date, neither ING Bank nor OW Bunker have been paid for the bunkers delivered to the ZHENG RUN in breach of the ZHENG RUN Confirmation and OW General Terms, and plaintiff is accordingly owed US$ 408,651.28 for the bunkers, fees, and charges as aforesaid.

26.

Pursuant to the OW General Terms, Article I.5, OW Bunker is entitled to recover contractual interest of three (3%) percent per month on the foregoing unpaid invoice amount until paid, and a delayed payment administrative fee of US$ 1.50 per metric ton of bunkers supplied. (Exh. A, OW General Terms, p. 7, art. I.5.)

8

27.

Pursuant to the OW General Terms, Article I.7, all costs borne by OW Bunker in connection with the collection of overdue payments, whether made in or out of court and in general all costs in connection with breach of the contract shall be for the breaching party's sole account. (*Id*., art. I.7.) Accordingly, OW Bunker is entitled to recover all attorney's fees and costs resulting from its efforts to collect payment on the ZHENG RUN Invoice, and pursuant to the OW General Terms, the ZHENG RUN and FOSCO remain jointly and severally liable for all amounts due and owing OW Bunker.

**B.      Unpaid Bunkers Supplied and Delivered to the ZHENG RONG**

28.

OW Bunker contracted to provide bunkers and related barging services to the ZHENG RONG in Singapore, which bunkers were ordered by FOSCO. This contract to provide bunkers is evidenced by Sales Order Confirmation No. 201-10755, dated November 5, 2014, a true and correct copy of which is attached as Exhibit C-1, hereafter the "ZHENG RONG Confirmation".

29.

The ZHENG RONG Confirmation, as well as the supply and delivery of marine fuels to the ZHENG RONG, were subject to the OW General Terms, as set forth above in Paragraphs 13 – 17, which are repeated herein as if copied *in extenso*.

30.

On November 5, 2014, OW Bunker issued the ZHENG RONG Confirmation for the account of FOSCO, which was addressed to FOSCO, and indicated that it would provide 1,700 metric tons of Fueloil 380-CST 3.5%, 100.00 metric tons of Fueloil 380-CST 3.5%, and 70.00 metric tons of Gasoil 0.1% marine bunkers to the ZHENG RONG in Singapore, including

associated barge delivery service, with an estimated delivery date of November 4, 2014.  (Exh. C-1, ZHENG RONG Confirmation, p. 1.)

31.

On November 4 and 5, 2014, pursuant to the ZHENG RONG Confirmation and the OW General Terms, the ZHENG RONG accepted the delivery of 1,664.594 metric tons of Fueloil 380-CST 3.5% and 98.231 metric tons of Fueloil 380-CST 3.5%, and 62.399 metric tons of Gasoil 0.1% marine bunkers from OW Bunker.  The bunker delivery was made on behalf of OW Bunker as evidenced by the ZHENG RONG Bunker Delivery Notes, true and correct copies of which are attached as Exhibit C-2 *in globo*, hereafter the "ZHENG RONG BDNs".

32.

On November 4, 2014, OW Bunker issued an invoice to FOSCO, which was addressed to FOSCO, referencing Sales Confirmation No. 201-10755, in the amount of US\$ 906,596.24 for 1,664.594 metric tons of Fueloil 380-CST 3.5%, 98.231 metric tons of Fueloil 380 CST 3.5% and 62.399 metric tons of Gasoil 0.1% marine bunkers delivered to the ZHENG RONG in Singapore, to be paid on or before December 3, 2014, a true and correct copy of which is attached as Exhibit C-3, hereafter "ZHENG RONG Invoice".

33.

As of this date, neither ING Bank nor OW Bunker has been paid for the bunkers delivered to the ZHENG RONG in breach of the ZHENG RONG Confirmation and OW General Terms, and Plaintiff is accordingly owed US\$ 906,596.24 for the bunkers, fees, and charges as aforesaid.

34.

Pursuant to the OW General Terms, Article I.5, OW Bunker is entitled to recover

contractual interest of three (3%) percent per month on the foregoing unpaid invoice amount until paid, and a delayed payment administrative fee of US$ 1.50 per metric ton of bunkers supplied. (Exh. A, OW General Terms, p. 7, art. I.5.)

35.

Pursuant to the OW General Terms, Article I.7, all costs borne by OW Bunker in connection with the collection of overdue payments, whether made in or out of court and in general all costs in connection with breach of the contract shall be for the breaching party's sole account. (*Id*., art. I.7.) Accordingly, OW Bunker is entitled to recover all attorney's fees and costs resulting from its efforts to collect payment on the ZHENG RONG Invoice, and pursuant to the OW General Terms, the ZHENG RONG and FOSCO remain jointly and severally liable for all amounts due and owing OW Bunker.

## IV.   TRANSACTIONS BETWEEN DOT AND FOSCO FOR THE SUPPLY AND DELIVERY OF BUNKERS TO THE ZHENG TAI, ZHENG HENG AND ZHENG BANG

36.

As discussed with greater specificity herein, when FOSCO ordered bunkers for its vessels, including the ZHENG TAI, ZHENG HENG, and ZHENG BANG (hereafter "DOT Supplied Vessels"), from DOT, DOT would issue a Sales Order Confirmation to FOSCO, which confirmation would identify the specific vessel to be supplied with bunkers, the location of the supply, the estimated date(s) of supply, the type and quantity of bunkers to be supplied, the price per volume of bunkers to be supplied, as well as other provisions.

37.

Each Confirmation issued by DOT contained the following relevant language:

The sale and delivery of the marine fuels described above are subject to the Dynamic Oil Trading Terms and Conditions of sale(s) for Marine Bunkers. The

acceptance of the marine bunkers by the vessel named above shall be deemed to constitute acceptance of said general terms to you as 'Buyer' and to Dynamic Oil Trading as 'Seller'. The fixed terms and conditions are well known to you and remain in your possession. If this is not the case, the terms can be found under the web address: http://www.dynamicoiltrading.com/dynamic-gtc-2012.pdf

Accordingly, each Confirmation, as well as the supply and delivery of the marine fuels to the DOT Supplied Vessels were subject to the Dynamic Oil Trading (Singapore) Pte. Ltd. Terms and Conditions of sale for Marine Bunkers, Edition 2012, a true and correct copy of which is attached as Exhibit D, hereafter the "DOT General Terms".

38.

Article B.1 of the DOT General Terms defines the term "Buyer" to mean the vessel supplied and, jointly and severally her master, owners, managers/operators, disponent owners, time charterers, bareboat charterers, and charterers or any party ordering bunkers and / or services. (Exh. D, DOT General Terms, p. 2, art. B.1.) As discussed *infra*, the DOT Supplied Vessels accepted marine bunkers from DOT pursuant to the Confirmations. Accordingly, the DOT Supplied Vessels and FOSCO fall within the definition of Buyer and are, therefore, bound and obligated jointly and severally to the sales order confirmation and to the DOT General Terms, which DOT General Terms were incorporated in the sales order confirmation by express reference and adoption. See *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 265 (5th Cir. 2011).  See also *World Fuel Servs. Singapore Pte, Ltd. v. Bulk Juliana M/V*, No. CIV.A. 13-5421, 2015 WL 575201, at *3 (E.D. La. Feb. 11, 2015) (holding that Singapore law recognizes incorporation by reference).

39.

Article H.3 of the DOT General Terms provides as follows:

[DOT] shall have a security interest in and a maritime lien (where such jurisdiction recognizes such a lien) on all Bunkers or part thereof for which

12

payment has not been received, and [DOT] shall be entitled to repossess Bunkers for which payment has not been made without prior judicial intervention, all without prejudice to all other rights or remedies available to [DOT].

(Exh. D, DOT General Terms, p. 9, art. H.3.)

40.

Article H.5 of the DOT General Terms provides as follows:

[DOT] has a maritime lien on the [DOT Supplied Vessels] for any unpaid amounts under the Agreement and shall be entitled to arrest/attach the [DOT Supplied Vessels] and/or sister ship and/or any other assets of the Buyer (or the Owner of the Vessel), cf. Clause C.5) wherever situated in the world without prior notice to obtain payment of the outstanding amounts.

(*Id.*, p. 9, art. H.5.)

41.

Article P.1 of the DOT General Terms provides as follows:

This Contract shall be governed by and construed in accordance with Singapore law.

(*Id.*, p. 15, art. P.1.)

42.

Article P.7 of the DOT General Terms Provides as follows:

For the sole benefit of [DOT] it has further agreed that without prejudice to [DOT's] rights hereunder, [DOT] has the right to proceed against the Buyer, any third party or the Vessel in such jurisdiction as [DOT] in its sole discretion sees fit inter alia for the purpose of securing payment of any amount due to [DOT] from the Buyer or the Owner.

(*Id.*, art. P.7.)

43.

For clarity of discussion in this § IV, DOT, as assignor, and ING Bank, as assignee, are referred to collectively as "DOT".

A.      FOSCO's Liability to DOT under Singapore Law

44.

Under Singapore law, in order for the admiralty jurisdiction of the Singapore Court to be invoked, a claim must fall within a prescribed list of maritime claims. Section 3 of the High Court (Admiralty Jurisdiction) Act (Chapter 123) ("HCAJA") sets out a list of claims for which the court may exercise admiralty jurisdiction to seize a vessel. Section 3(1)(l) of the HCAJA provides that:

> "3.—(1)  The admiralty jurisdiction of the High Court shall be as follows, that is to say, jurisdiction to hear and determine any of the following questions or claims … any claim in respect of goods or materials supplied to a ship for her operation or maintenance."

Accordingly, a claim for outstanding payment in respect of bunkers supplied to the vessel for her operation or maintenance would fall under section 3(1)(l) of the HCAJA.

45.

A plaintiff must also comply with one of the subsections of section 4(2)-(4) of the HCAJA. In the case at hand, the relevant provision is section 4(4) of the HCAJA, which provides that:

> "(4)  In the case of any such claim as is mentioned in section 3(1)(d) to (q), being a claim arising in connection with a ship, where the person who would be liable on the claim in an action in personam was, when the cause of the action arose, the owner or charterer of, or in possession or in control of, the ship, the admiralty jurisdiction of the High Court may (whether the claim gives rise to a maritime lien on the ship or not) be invoked by an action in rem against —
>
> (a)      that ship, if at the time when the action is brought the relevant person is either the beneficial owner of that ship as respects all the shares in it or the charterer of that ship under a charter by demise; or
>
> (b)      any other ship which, at the time when the action is brought, is beneficially owned as aforesaid."

14

46.

Therefore, pursuant to section 4(4) of the HCAJA, the following requirements must be satisfied:

(a)  The claim must arise in connection with a ship; and

(b)  The person held liable on the claim in an action in personam must be in certain prescribed control of the ship and must be the beneficial owner or demise charterer of the ship when admiralty proceedings are commenced.

47.

The first requirement of section 4(4) of the HCAJA is satisfied because DOT's claim arose in a connection with ships, the DOT Supplied Vessels.  The second requirement of section 4(4) of the HCAJA, that the person who would be liable on the claim in an action in personam (hereafter "the Relevant Person") is the beneficial owner or demise charterer of the DOT Supplied Vessels, also is satisfied because FOSCO is the group owner and/or beneficial owner and/or demise charterer and/or operator and/or manager of the DOT Supplied Vessels. Accordingly, FOSCO is liable to DOT under Singapore law for the non − payment of bunkers supplied by DOT to the DOT Supplied Vessels, as more specifically set forth herein.

**B.      Unpaid Bunkers Supplied and Delivered to the ZHENG TAI**

48.

DOT contracted to provide bunkers and related barging services to the ZHENG TAI in Singapore, which bunkers were ordered by FOSCO.  This contract to provide bunkers is evidenced by Sales Order Confirmation No. 500-14538, issued on or about September 26, 2014, a true and correct copy of which is attached as Exhibit E-1, hereafter the "ZHENG TAI Confirmation".

49.

The ZHENG TAI Confirmation, as well as the supply and delivery of marine fuels to the ZHENG TAI, were subject to the DOT General Terms, as set forth in Paragraphs 37 – 42, which are repeated herein as if copied *in extenso*.

50.

DOT issued the ZHENG TAI Confirmation for the account of the Master and/or Owner and/or Charterers and/or M/V ZHENG TAI and/or FOSCO and indicated that it would provide 550 metric tons of 380 CST IFO 3.5% RMG 2005 marine bunkers to the ZHENG TAI in Singapore, with an estimated delivery date of October 2, 2014.

51.

On October 3, 2014, pursuant to the ZHENG TAI Confirmation and the DOT General Terms, the ZHENG TAI accepted the delivery of 509.141 metric tons of 380 CST IFO 3.5% RMG 2005 marine bunkers from DOT. The bunker delivery was made on behalf of DOT as evidenced by the Bunker Delivery Note, a true and correct copy of which is attached as Exhibit E-2, hereafter the "ZHENG TAI BDN".

52.

On October 3, 2014, DOT issued an invoice to the ZHENG TAI and/or FOSCO, which was addressed to FOSCO, referencing Confirmation No. 500-14538, in the amount of US$ 293,265.22 for 509.141 metric tons of 380 CST IFO 3.5% RMG 2005 marine bunkers delivered to the ZHENG TAI in Singapore, to be paid on or before November 16, 2014, a true and correct copy of which is attached hereto as Exhibit E-3, hereafter the "ZHENG TAI Invoice".

53.

As of this date, neither ING Bank nor DOT has been paid for the bunkers delivered to the

ZHENG TAI in breach of the ZHENG TAI Confirmation and DOT General Terms, and plaintiff is accordingly owed US$ 293,265.22 for the bunkers, fees and charges as aforesaid.

54.

Pursuant to the DOT General Terms, Article I.5, DOT is entitled to recover contractual interest of two (2%) percent per month on the foregoing unpaid invoiced amount until paid, and a delayed payment administrative fee of US$ 1.00 per metric ton of bunkers supplied. (Exh. D, DOT General Terms, p. 9, art. I.5.)

55.

Pursuant to the DOT General Terms, Article I.5, all costs borne by DOT in connection with the collection of overdue payments, whether made in or out of court and in general all costs in connection with breach of the contract shall be for the Buyer's sole account. (*Id*., art. I.5.). Accordingly, DOT is additionally entitled to recover for all attorney's fees and costs incurred by DOT resulting from its efforts to collect payment on the ZHENG TAI Invoice, including attorney's fees and costs associated with this civil action, and pursuant to the DOT General Terms, FOSCO remains liable for all amounts due and owing to DOT.

C.     **Unpaid Bunkers Supplied and Delivered to the ZHENG HENG**

56.

DOT contracted to provide bunkers and related barging services to the ZHENG HENG in Jiangsu, China, which bunkers were ordered by FOSCO. This contract to provide bunkers is evidenced by Sales Order Confirmation No. 500-14756, issued on or about October 20, 2014, a true and correct copy of which is attached as Exhibit F-1, hereafter the "ZHENG HENG Confirmation".

57.

The ZHENG HENG Confirmation, as well as the supply and delivery of marine fuels to the ZHENG HENG, were subject to the DOT General Terms, as set forth in Paragraphs 37 – 42, which are repeated herein as if copied *in extenso*.

58.

DOT issued the ZHENG HENG Confirmation for the account of the Master and/or Owner and/or Charterers and/or M/V ZHENG HENG and/or FOSCO and indicated that it would provide 1,200 metric tons of 380 CST IFO HS 3.5% RMG 2005 marine bunkers to the ZHENG HENG in Jiangsu, China, with an estimated delivery date of October 20, 2014

59.

On October 23, 2014, pursuant to the ZHENG HENG Confirmation and the DOT General Terms, the ZHENG HENG accepted the delivery of 1,199.780 metric tons of 380 CST IFO HS 3.5% RMG 2005 marine bunkers from DOT. The bunker delivery was made on behalf of DOT as evidenced by the Bunker Delivery Note, a true and correct copy of which is attached as Exhibit F-2, hereafter the "ZHENG HENG BDN".

60.

On October 23, 2014, DOT issued an invoice to the ZHENG HENG and/or FOSCO, which was addressed to FOSCO, referencing Confirmation No. 500-14756, in the amount of US$ 626,285.16 for 1,199.780 metric tons of 380 CST IFO HS 3.5% RMG 2005 marine bunkers delivered to the ZHENG HENG in Jiangsu, to be paid on or before December 6, 2014, a true and correct copy of which is attached hereto as Exhibit F-3, hereafter the "ZHENG HENG Invoice".

61.

As of this date, neither ING Bank nor DOT has been paid for the bunkers delivered to the

ZHENG HENG in breach of the ZHENG HENG Confirmation and DOT General Terms, and plaintiff is accordingly owed US$ 626,285.16 for the bunkers, fees and charges as aforesaid.

62.

Pursuant to the DOT General Terms, Article I.5, DOT is entitled to recover contractual interest of two (2%) percent per month on the foregoing unpaid invoiced amount until paid, and a delayed payment administrative fee of US$ 1.00 per metric ton of bunkers supplied.  (Exh. D, DOT General Terms, p. 9, art. I.5.)

63.

Pursuant to the DOT General Terms, Article I.5, all costs borne by DOT in connection with the collection of overdue payments, whether made in or out of court and in general all costs in connection with breach of the contract shall be for the Buyer's sole account.  (*Id*., art. I.5.) Accordingly, DOT is additionally entitled to recover for all attorney's fees and costs incurred by DOT resulting from its efforts to collect payment on the ZHENG HENG Invoice, including attorney's fees and costs associated with this civil action, and pursuant to the DOT General Terms, FOSCO remains liable for all amounts due and owing to DOT.

**D.    Unpaid Bunkers Supplied and Delivered to the ZHENG BANG**

64.

DOT contracted to provide bunkers and related barging services to the ZHENG BANG in Singapore, which bunkers were ordered by FOSCO.  This contract to provide bunkers is evidenced by Sales Order Confirmation No. 500-14816, issued on or about October 24, 2014, a true and correct copy of which is attached as Exhibit G-1, hereafter the "ZHENG BANG Confirmation".

65.

The ZHENG BANG Confirmation, as well as the supply and delivery of marine fuels to the ZHENG BANG, were subject to the DOT General Terms, as set forth in Paragraphs 37 – 42, which are repeated herein as if copied *in extenso*.

66.

DOT issued a Sales Order Confirmation for the account of FOSCO and indicated that it would provide 500 metric tons of 380 CST IFO HS 3.5% RMG 2005 marine bunkers to the ZHENG BANG in Singapore, with an estimated delivery date of between October 27 and October 30, 2014.

67.

On October 28, 2014, pursuant to the ZHENG BANG Confirmation and the DOT General Terms, the ZHENG BANG accepted the delivery of 532.188 metric tons of 380 CST IFO HS 3.5% RMG 2005 marine bunkers from DOT. The bunker delivery was made on behalf of DOT as evidenced by the Bunker Delivery Note, a true and correct copy of which is attached as Exhibit G-2, hereafter the "ZHENG BANG BDN".

68.

On October 28, 2014, DOT issued an invoice to the ZHENG BANG, which was addressed to FOSCO, referencing Confirmation No. 500-14816, in the amount of US$ 258,643.37 for 532.188 metric tons of 380 CST IFO HS 3.5% RMG 2005 marine bunkers delivered to the ZHENG BANG in Singapore, to be paid on or before December 11, 2014, a true and correct copy of which is attached hereto as Exhibit G-3, hereafter the "ZHENG BANG Invoice".

69.

As of this date, neither ING Bank nor DOT has been paid for the bunkers delivered to the ZHENG BANG in breach of the ZHENG BANG Confirmation and DOT General Terms, and plaintiff is accordingly owed US$ 258,643.37 for the bunkers, fees and charges as aforesaid.

70.

Pursuant to the DOT General Terms, Article I.5, DOT is entitled to recover contractual interest of two (2%) percent per month on the foregoing unpaid invoiced amount until paid, and a delayed payment administrative fee of US$ 1.00 per metric ton of bunkers supplied.  (Exh. D, DOT General Terms, p. 9, art. I.5.)

71.

Pursuant to the DOT General Terms, Article I.5, all costs borne by DOT in connection with the collection of overdue payments, whether made in or out of court and in general all costs in connection with breach of the contract shall be for the Buyer's sole account.  (*Id.*, art. I.5.). Accordingly, DOT is additionally entitled to recover for all attorney's fees and costs incurred by DOT resulting from its efforts to collect payment on the ZHENG BANG Invoice, including attorney's fees and costs associated with this civil action, and pursuant to the DOT General Terms, FOSCO remains liable for all amounts due and owing to DOT.

## V.    SUMMARY OF UNPAID BUNKERS, INTEREST, FEES AND ATTORNEY FEES

72.

As of the date of this filing, ING Bank is owed the following amounts for unpaid bunkers delivered to each respective vessel:

<u>ZHENG RUN</u>

     A.    Invoice                                       US$ 408,651.28

| | | |
|---|---|---|
| B. | Accrued Interest | US$ 161,825.91 |
| C. | Administrative Fees | US$ 1,026.76 |

ZHENG RONG

| | | |
|---|---|---|
| A. | Invoice | US$ 906,596.24 |
| B. | Accrued Interest | US$ 359,918.71 |
| C. | Administrative Fees | US$ 2,728.84 |

ZHENG TAI

| | | |
|---|---|---|
| A. | Invoice | US$ 293,265.22 |
| B. | Accrued Interest | US$ 80,941.20 |
| C. | Administrative Fees | US$ 509.14 |

ZHENG HENG

| | | |
|---|---|---|
| A. | Invoice | US$ 626,285.16 |
| B. | Accrued Interest | US$ 164,504.24 |
| C. | Administrative Fees | US$ 1,199.78 |

ZHENG BANG

| | | |
|---|---|---|
| A. | Invoice | US$ 258,643.37 |
| B. | Accrued Interest | US$ 105,976.90 |
| C. | Administrative Fees | US$ 532.19 |

| | |
|---|---|
| Accrued and Anticipated Attorneys' Fees | US$ 50,000.00 |

**TOTAL**                                                                  **US$ 3,422,604.94**

## VI.   ZHENG YAO SHIPPING IS THE ALTER EGO OF FOSCO

73.

ING Bank realleges and reavers Paragraph 10 as if same were copied herein *in extenso*.

74.

A substantial portion of the evidence establishing Zheng Yao Shipping's status as the alter ego of FOSCO is in the control and custody of Zheng Yao Shipping, FOSCO, as well as other nominal vessel owning entities under the dominion and control of FOSCO.  Accordingly, ING Bank reserves the right to amend and supplement its First Amended Complaint as discovery proceeds.

75.

Investigation by undersigned counsel for ING Bank as of this date has revealed that FOSCO has exercised dominion and control over Zheng Yao Shipping in the following, non - exclusive respects:

A.   FOSCO incorporated Zheng Yao Shipping on November 1, 2010;

B.   Chen Xun Jie, one of FOSCO's shareholders and who is also, on information and belief, a director, officer and/or employee of FOSCO was the founding member, subscriber and first director of Zheng Yao Shipping;

C.   FOSCO and Zheng Yao Shipping share the same registered office, located at Unit B & C, 20/F, Full Win Commercial Centre, 573 Nathan Road, Yaumantei, Kowloon;

D.   FOSCO and Zheng Yao Shipping have always shared the same principal business address, first at 20/F, Sino International Plaza, No. 137 Wusi Road, Fuzhou, Fujian, and presently at the address set forth in Paragraph 9;

E.   Requests for information from Zheng Yao Shipping have been and continue to be directed "care of" FOSCO;

F.   The sole physical asset that Zheng Yao Shipping nominally owns is the ZHENG

YAO, which FOSCO operates and manages as its own through a long term

charter arrangement, and subsequently operates and / or charterers to third parties

for FOSCO's benefit;

G.      On information and belief, FOSCO pays all salaries and other expenses of Zheng

Yao Shipping from funds received by FOSCO as the owner *pro hac vice* of the

ZHENG YAO, as well as other vessels comprising the FOSCO fleet, including,

but not limited to, the Supplied Vessels;

H.      FOSCO has secured and paid for hull coverage and hull and machinery insurance

on the ZHENG YAO and is identified as the client for that purpose;

I.      FOSCO has guaranteed the financing debt of Zheng Yao Shipping, and has

agreed to be bound by and liable for such indebtedness;

J.      On information and belief, FOSCO otherwise finances Zheng Yao Shipping

solely through periodic payments, if any, of charter hire in exchange for FOSCO's

exclusive use, operation, ownership and management of the ZHENG YAO;

K.      On information and belief, Zheng Yao Shipping receives no business except that

given to it by FOSCO; and,

L.      FOSCO otherwise exercises dominion and control over Zheng Yao Shipping, as

will be presented at the trial of this matter.

76.

FOSCO is identified as the "Group Owner" of the ZHENG YAO and other vessels

comprising the FOSCO fleet, including, but not limited to the Supplied Vessels, which FOSCO

solely controls, operates and manages itself or through other subsidiary and affiliated companies

(over all of which FOSCO exercises dominion and control such that they are also FOSCO's alter

24

egos) to generate all of FOSCO's business revenue.

77.

On information and belief, each other vessel in FOSCO's fleet is controlled, operated and managed by FOSCO through the same "single ship company" structure detailed above for the ZHENG YAO, including FOSCO incorporating and owning each respective nominal vessel owning company.

78.

FOSCO nominally owns no physical assets itself that would be subject to attachment, seizure or other restraint to obtain security for the payment of the debts of FOSCO.  FOSCO has utilized its control over Zheng Yao Shipping as well as the other nominal vessel owning companies for the Supplied Vessels to defraud or otherwise wrongfully deprive the general creditors of FOSCO, such as OW Bunker and DOT, from collecting the debts incurred by FOSCO in the operation of the vessels of the FOSCO fleet as more fully alleged herein.  FOSCO has additionally utilized its control over Zheng Yao Shipping as well as the other nominal vessel owning companies for the Supplied Vessels to defraud or otherwise wrongfully shield the actual physical assets of FOSCO from attachment, seizure or other restraint otherwise available to the general creditors of FOSCO, such as OW Bunker and DOT.

79.

For the reasons more fully set forth above, this Court should disregard the corporate formalities of FOSCO and Zheng Yao Shipping and conclude that the ZHENG YAO is owned *de facto, de jure*, and *pro hac vice* by FOSCO.

**VII.   REQUEST FOR ATTACHMENT OF THE ZHENG YAO PURSUANT TO SUPPLEMENTAL ADMIRALTY RULE B**

80.

OW Bunker and DOT reallege and reaver Paragraphs 1 through 79 *supra* as if same were copied herein *in extenso*.

81.

Pursuant to Rule B of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, ING Bank is entitled to attach all of FOSCO's property within this District, including, but not limited to, the ZHENG YAO to satisfy the claims of OW Bunker and DOT, as well as other costs taxable to FOSCO as a result of ING Bank's having to bring this action, including but not limited to pre-judgment interest, costs, expenses, and attorneys' fees.

82.

ING Bank agrees to release and hold harmless and indemnify the United States of America, the United States Marshal, their agents, servants, employees, and all others for whom they are responsible, from any and all liability or responsibility for claims arising from the attachment of the aforesaid ZHENG YAO.

All and singular the foregoing premises are true and correct within the admiralty jurisdiction of this Honorable Court.

**WHEREFORE**, plaintiff, ING Bank N.V., prays:

1.      That this Verified First Amended Complaint be deemed good and sufficient;

2.      That process in due form of law according to the rules and practices of this Court may issue against FOSCO, requesting it to appear and answer all singular the matters aforesaid;

3.      That because FOSCO is a foreign corporation which cannot be found within this

District, is not qualified to do business in the State of Louisiana, and has no agent for the service of process, that all of FOSCO's goods, chattels, funds, credits, money and other assets or property found within this District, including the M/V ZHENG YAO, IMO No. 9601883, her engines, tackle, equipment, furniture, appurtenances, etc. be attached to satisfy the sum of ING Bank's claims up to the amount of **US$ 3,422,604.94** plus attorneys' fees, costs, expenses, and pre-judgment interest, all pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, including the fees and costs of the United States Marshal;

4.   That this Court issue a Writ of Maritime Attachment and Garnishment of all property of FOSCO in this District to the Master of the M/V ZHENG YAO;

5.   That this Court retain the attached property and/or the proceeds of sale as security pending adjudication of ING Bank's claims against FOSCO;

6.   That any property attached in this proceeding be sold under the direction of this Court and the proceeds of the sale be deposited into the Registry of this Court;

7.   That this Court retain jurisdiction over FOSCO to attach its property found within the District in order to enter a judgment, upon conclusion of this civil action, in favor of ING Bank and against FOSCO, in personam, in the amount of ING Bank's claim and any additional amounts owed, including, but not limited to, attorneys' fees, costs, expenses, and pre-judgment interest for ING Bank's damages;

8.   That this Court, after due proceedings are had, enter a judgment in favor of ING Bank and against FOSCO in the principal amount of **US$ 3,422,604.94** plus

attorneys' fees, costs, expenses, and pre-judgment interest, and any additional amounts owed, including, but not limited to, attorneys' fees, costs, expenses, and pre-judgment interest;

9.     That this Court grant ING Bank such other and further relief as may be just and proper.

Respectfully submitted:

_____/s/ James D. Bercaw_____
**JAMES D. BERCAW (#20492)**
**ROBERT J. STEFANI (# 19248)**
**LEN R. BRIGNAC (#18139)**
**LAURA E. AVERY (#35636)**
**KING, KREBS & JURGENS, P.L.L.C.**
201 St. Charles Avenue, 45th Floor
New Orleans, Louisiana  70170
Telephone:  (504) 582-3800
Facsimile:  (504) 582-1233
Email: jbercaw@kingkrebs.com
rstefani@kingkrebs.com
lbrignac@kingkrebs.com
lavery@kingkrebs.com

**Attorneys for ING Bank N.V.**

**PLEASE SERVE:**

**The Master of the M/V ZHENG YAO, IMO No. 9601883**
**And Issue a Writ of Maritime Attachment of the M/V ZHENG YAO**

28